[No 1294.]

JACOB N. WINTER, APPELLANT, *v.* ROBERT FULSTONE,
RESPONDENT.

WATER RIGHTS — IRRIGATION — FINDINGS — EVIDENCE. — Findings of the
trial court, based upon conflicting testimony, and aided by a personal
inspection of the subject of controversy, will not be disturbed on
appeal.

IDEM — FINDINGS SUSTAINED BY THE EVIDENCE. — The various findings
of the court reviewed and evidence held sufficient to sustain the find-
ings. (See opinion.)

IDEM — FINDING, AS TO FLOW AND USE OF WATER, CONSTRUED. — A
finding that "defendant is entitled to a decree that during the non-
irrigating months the waters of Jack's Valley creek shall flow in
equal portions in the north and south beds or channels of said stream,
and that both plaintiff and defendant may use said water in the non-
irrigating season for stock and domestic purposes, as it flows across
their respective land, in the natural beds or channels," is not a find-
ing that defendant has the right to use one-half of the water flowing
in the stream, nor any given quantity thereof, except sufficient for his
stock, etc.

IDEM — EVIDENCE — OPINION OF WITNESS — FACTS. — A question asked a
witness as to which of two channels the water of a creek would flow
in if unobstructed does not call for the opinion of the witness, but for
a fact derived from personal observation, and is not an inquiry calling
for expert testimony.

ERROR—WHEN CURED.—Error in excluding testimony is cured by its admission at a subsequent stage of the trial.

ON REHEARING—APPEAL—REHEARING—MODIFYING JUDGMENT.—On petition for rehearing, where complaint as to a portion of the judgment is for the first time made, and it appears that such portion was not author zed by the pleadings, the judgment will be modified in that respect, and the rehearing denied.

APPEAL from the District Court of the Second Judicial District, Douglas County.

The facts are stited in the opinion.

*Robt. M. Clarke*, for Appellant.

*D. W. Virgin, J. R. Judge*, and *Trenmor Coffin*, for Respondent.

By the Court, MURPHY, J.:

This action was brought to recover damages for the alleged wrongful and unlawful diversion of water from Jack's Valley creek, and away from a portion of appellant's land, at times during the irrigating seasons of 1882, 1883, 1884 and 1885; for diverting the waters of said creek away from the natural channel or bed thereof in the non-irrigating season, to wit: in the months of November, December, January, February, and March in the years 1881, 1882, 1883, 1884, and 1885, and away from a portion of appellant's land; for diverting a portion of the water of said stream during the irrigating season of the years 1882, 1883, 1884, and 1885, and discharging a portion of said water so diverted upon the lands of appellant, washing channels and gullies therein, and destroying about fifteen acres thereof; for diverting the water of said stream from the natural channel or bed thereof during the non-irrigating months, to wit: November, December, January, February and March of the years 1882, 1883, 1884, and 1885, spreading the same over lands of respondent lying above lands of appellant, thereby flooding appellant's land, making it too wet, and injuring the crops grown thereon, and rendering the said land unfit for cultivation,—and for an injunction to prevent further threatened injuries. Defendant in his answer denies that any act or acts of his, whether mentioned in the complaint or not, wrongfully, unlawfully, or otherwise, ever in any way or manner injured

the plaintiff's land, or the crops growing thereon. The cause was tried before the court without a jury. Judgment was rendered in favor of the defendant for his costs. Plaintiff appeals from the judgment, and from the order overruling his motion for a new trial. The cause comes up for review on the state· ment on motion for new trial, and the appeal is based upon the grounds: (1) The insufficiency of the evidence to justify the findings and decision of the court; (2) errors of law occurring at the trial, duly excepted to by the plaintiff.

The findings of fact are as follows: " (1) That from time immemorial a natural stream or watercourse, known as ' Jack's Valley Creek,' has flown and run from the Sierra Nevada mountains eastward across Jack's valley; that a short distance below where said stream debouches from the mountains into said Jack's valley the bed or channel thereof divides into two natural beds or channels, through which two natural beds or channels the waters of said creek have divided and flowed from time immemorial. Said two natural beds or channels are known in this case and in the testimony as the 'North Stream,' and the ' South Stream,' respectively; that the north stream flows from the point where said creek divides into two channels, across the northwest portion of defendant's lands, and thence on to the lands of plaintiff; the south stream flows from said point, between the defendant's house and barn, across the entire length —from west to east—of defendant's land, and thence on to lands of plaintiff. (2) That during the trial of said cause plaintiff and defendant, and all of the ranchers or farmers in Jack's valley, made, signed, and filed herein in open court the following stipulation and agreement, to wit: ' It is agreed in. open court, between plaintiff and defendant and their respective attorneys, and other persons herein named, that the plaintiff is the owner of and has the title to the land described in the complaint, and has been, as in the complaint alleged; that the defendant is the owner of and has the title to the land described in his answer, and has been such owner, as in the answer alleged. It is further agreed that the plaintiff, Winter, is the owner of, and entitled to use during the irrigating season, all the water of the stream in controversy for and during four days and six hours in each eight days; that the defendant, Robert Fulstone, is the owner of and entitled to use during the irrigating season all the water of the stream in controversy for one

day and twelve hours of each eight days; that Henry Fulstone
is the owner of and entitled to use during the irrigating season
all the water of the stream in controversy for six hours during
each eight days; that B. F. Nesmith is the owner of and enti-
tled to use during the irrigating season all the water of the
stream in controversy, one day during each eight days; that
A. B. Johns is the owner of and entitled to use during the irri-
gating season all the water of the stream in controversy
during one day of each eight days;   that the use of the
water herein stipulated for, the time mentioned is to be con-
secutive   use, and to be  in   the   order   herein   mentioned.
It is further stipulated that the decree of the court shall
be entered in pursuance of and conformity with the stipulation,
and the parties shall be severally enjoined from interfering with
each other's use.   It is understood that the irrigating season
meant by this stipulation begins on the first day of April and
ends on the thirty-first day of October of each year.   As to the
remaining months, as to the use of the water during such
months, the question is not closed by this stipulation,
but remains open.   It is further stipulated that, when the time
or turn of the several parties mentioned herein occurs, it shall
be his right and duty to turn and take the water, if he requires
it, and that until the water is so turned it shall continue to flow
in the course or ditch where for the time being it shall be
found.   The time and day shall be held to begin at sunrise in
Jack's valley.   This stipulation shall be of no binding force or
effect unless signed by and concurred in by all persons named,
among whom said waters are apportioned by periods of time,
and not to apply to any matters not specifically named."   (This
stipulation was signed by the attorneys for plaintiff and the
defendant. It was also signed by all the ranchers in Jack's
valley.)   "(3) The defendant never at any time during the
irrigating season of any year mentioned in plaintiff's complaint
diverted any of the water of Jack's Valley creek from the nat-
ural bed or channel thereof at any point, or from either bed or
channel thereof, at or below the point where said creek divides
into two channels; and never permanently or otherwise turned
the water of said stream, or any part thereof, away from the
bed or beds or channels of said stream; and never in any way used
the water of said stream; except as he was lawfully and rightfully
entitled to divert and use the same as set forth in the above-

.mentioned stipulation; that the right of all parties signing said stipulation to divert and use said water during the irrigating season, as set forth in said stipulation, has existed and been actually used and enjoyed for more than ten years last past.  (4) That defendant never at any time during the irrigation season of any year mentioned in plaintiff's complaint diverted any of the waters of said Jack's Valley creek, and, after diverting, discharged the same, or any part thereof, upon any lands of plaintiff.  (5) That defendant never in any of the years mentioned in plaintiff's complaint, in the non-irrigating season, in the months of November, December, January, February, and March, diverted any of the waters of said Jack's Valley creek, or from either or any bed or channel thereof, and turned or spread the same upon or over any land owned or occupied by him, or diverted any of the waters of said creek, or turned or spread the same upon or over any lands whatever during said months.  (6) That it has been the custom of plaintiff and defendant, and of other farmers or ranchers in Jack's valley, for the ten years last past, in the non-irrigating season, to turn all the water of said creek out of their irrigating ditches, back into the north and south streams of said creek, and it has been the custom of plaintiff and defendant in the non-irrigating season to turn the water of said creek in as near equal proportions as possible, into the north and south streams of said Jack's Valley creek, respectively; that for ten years last past it has been the custom of defendant, with the knowledge, consent, and acquiescence of plaintiff, in the non-irrigating season, to turn some of the water out of the south stream into the north stream of said creek so that the water ran in equal proportions down said two streams, respectively.  (7) That defendant's lands are situated to the west of and on much higher ground than the lands of plaintiff lying to the east of defendant's land; that the damage claimed by plaintiff is upon his land lying immediately to the east of defendant's lands; . and upon the upper and western portion of plaintiff's lands, which lie north of defendant's lands, there are large tracts of marshy or boggy land, out of which ooze and rise large quantities of water, which flows for some distance over the surface of the land, and then seeps and percolates into the soil, and disappears; that the lands of plaintiff lying immediately to the east of defendant's is heavy, wet land; that the wet condition of said land is caused by water

seeping and percolating into the same from the marshy and boggy land above, and from melting snows in and near the foot of the mountains, and is in nowise caused by any act or negligence or fault of defendant. (8) That plaintiff has not been damaged in his crops as alleged in his complaint, except by natural causes, over which defendant had no control; the lands 'upon which crops were alleged to have been damaged were in each of the years mentioned in said complaint in proper condition for plowing and seeding as early as other lands of the same character in Jack's Valley; that crops on said lands averaged well with similar crops on like lands in the same years. (9) That plaintiff has not been damaged by the washing away or washing into gullies, or by any washing of his land by any act or fault or negligence of defendant; that there has been some damage done to plaintiff's land by washing near the lower portion of his land, at and near the east side of Jack's valley, far below the lands of defendant, but that said lands were so damaged by extraordinary high waters and freshets, over which defendant had and could exercise no control. Said damages were principally caused by high waters and freshets, over which defendant had and could exercise no control. Said damages were principally caused by high water caused by rains and storms, which the witnesses in this case have called 'the floods of the spring of 1862,' and by a 'cloud burst' in the summer of 1882. None of said damages were caused by the ordinary flow of the water of Jack's Valley creek at its ordinary stages."

The court finds, as a matter of law, that the waters of Jack's Valley creek shall be distributed to the parties for the time and in the manner as set forth in the stipulation, and each person signing said stipulation is enjoined from interfering with the rights of the others; that the waters of said creek shall flow in equal portions in the north and south beds or channels of said stream during the non-irrigating seasons; and that both plaintiff and defendant may use said water for stock and domestic purposes, as it flows across their lands in its natural beds or channels.

Counsel for appellant contends that finding No. 1 is not supported by the evidence, and that the decree is void, because the plaintiff in his complaint, having alleged that the water of

Jack's Valley creek in its natural bed or channel, when not wrongfully and unlawfully diverted by the defendant, passed through and over plaintiff's land, and supplied him with water to irrigate his land, for his stock and domestic purposes; that the defendant having denied that the natural bed or channel of said creek passed through or over lands of plaintiff, as set forth in his complaint, and averred that the said creek in its natural course and channel passed through and over the lands of defendant, and supplied him with water for irrigating his land, for his stock and domestic purposes, that it then became the duty of the court to say that the statements, as made by one of the parties, were true and the other false, and that the natural and only channel of said creek passed through and over either the lands of the plaintiff or the defendant. It is the duty of *nisi prius* courts to seek for the truth in all cases where the testimony is conflicting. As was said by Chief Justice Hawley in the case of *Barnes* v. *Sabron*, 10 Nev. 217: "It does not necessarily follow, that because there is a conflict in the testimony, that one or the other of the witnesses have testified falsely, and that the court must take the whole statement of one and reject the entire testimony of the other. It is the duty of all courts first to ascertain whether or not the testimony can be harmonized upon any given state of facts, before any part thereof is rejected." The judge who tried this cause was brought face to face with the witnesses, and could judge of their credibility. It also appears from the record that after the testimony was concluded, and before the attorneys had argued the cause to the court, by request of the parties in this action, the judge, accompanied by the sheriff, plaintiff, defendant, their attorneys, and H. H. Bence, who had made the surveys and was a witness in the case for both parties, went upon the lands of plaintiff and defendant, and made a personal inspection of the channels, streams, ditches, dams, sloughs, swales, cuts, washouts, marshes, springs, water-heads, and stumps of trees testified to upon the trial. With all the testimony fresh in his mind, he could apply the facts as presented to him to each and every object and thing mentioned by the witnesses during the trial. With all these advantages, the court passed upon the question, made its finding, which is consistent with and supported by the evidence, and declares that there are two channels or beds to Jack's Valley creek, and, under a well

settled rule of this and other courts, announced in a great number of decisions, we will not disturb the findings and decree of the court.

Finding 2 is supported by a decree· of the territorial court, rendered at Genoa, Douglas county, in the month of August, 1864, from which it appears that the appellant in this action was one of the plaintiffs in that, and the grantors of the respondent were the defendants, and the agreement to apportion the waters of Jack's Valley creek, as set forth in the stipulation contained in this finding, is based upon the said decree of said court. Findings 3 and 4 are supported by the evidence. Upon the trial of this case, the plaintiff did not introduce any testimony tending to prove that the defendant did, at any time during the irrigating season of any of the years mentioned in the complaint, divert any water from the stream, other than at the times and in the manner in which he was entitled to, as set-forth in· the stipulation, nor does it appear from the evidence that he ever discharged any water upon the plaintiff's land.. Findings 5, 7, 8, and 9 are supported by the evidence

Counsel for appellant argues that finding 6 cannot be sustained because the plaintiff in his complaint alleges that, during the non-irrigating season, the defendant is not entitled to use or have flow through the south channel of said stream but one-sixth of the water of Jack's Valley creek, while the defendant avers in his answer that he is entitled to one-third of the water flowing therein, and, the court having decreed that the waters of Jack's Valley creek shall flow in as equal proportions as possible into the north channel and the south channel,. therefore the court has said that the defendant is entitled to one-half of the water flowing in said creek, and by so deciding, the said finding, and the decree rendered thereon is erroneous, because it does not conform to the pleadings. We do not understand from the reading of the finding or decree that the court has awarded to the defendant one-half of the· water of said stream during the non-irrigating seasons, nor any given quantity of the waters, except sufficient for his stock and domestic purposes. The said finding declares what has been the custom of the farmers in Jack's valley for the past ten years. In subdivision 2 of the conclusions of law the court says "that the defendant is entitled to a decree that during the· months of November, December, January, February, and

March, the waters of Jack's Valley creek shall flow in equal portions, in the north and south beds or channels of said stream, and that both plaintiff and defendant may use said water in the non-irrigating season for stock and domestic purposes, as it flows across their respective lands, in the natural beds or channels." It is set forth in the decree that "the plaintiff and defendant, and each of their agents, attorneys, employes and grantees, be, and they are hereby, perpetually enjoined and restrained from diverting the water of said creek, and from making any other or different use thereof than is hereinbefore provided, in the non-irrigating season, and from irrigating their lands with said water, or from spreading said water over their lands for any purpose, in the non-irrigating season, as hereinbefore defined." From the reading of the foregoing, it is made very clear that the court did not give to the defendant the right to use one-half of the water flowing in the stream, nor any given quantity of the water, except sufficient for his stock and domestic purposes.

The question asked the witness Bence, as to which of the two channels the water would flow in if unobstructed, did not call for the opinion of the witness, but a fact derived from personal observation. It was not an inquiry into any subject-matter which required any peculiar habit, study or scientific knowledge to enable him to understand and answer the question intelligently. (Alt v. California F. Syrup Co., 19 Nev. 118.) It was proper cross-examination, as the witness had testified in chief as to the course and condition of the channel. If the ruling of the court in excluding the testimony of Thorne, when first offered, was error, it was cured, because at another stage of the proceedings the record shows that he was permitted to answer the questions as to the condition of the ditches and turnouts. (Lee v. McLeod, 17 Nev. 118; Bianchi v. Maggini, 17 Nev. 337; Patchen v. Keeley, 19 Nev. 403.) Judgment and order denying a new trial affirmed.

By the Court, MURPHY, J., on rehearing:

A petition for a rehearing has been filed, and although the appellant testified on the trial of the case that he did not use the water during the non-irrigating months, he now complains because the court enjoined him from the use of the water dur-

ing the non-irrigating season. As there is nothing in the pleadings that authorized the court to enjoin Winter from the use of water during the non-irrigating months, the judgment will be modified by striking out the name of Winter from that portion of the judgment enjoining him from the use of water during the non-irrigating months, and as so modified the judgment is affirmed. Rehearing denied.