## GIANNOPULOS v. CHACHAS

No. 2751

February 5, 1929.                    274 P. 193.

*Chandler & Quayle,* for Appellant:

*V. H. Vargas,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

This action was brought to recover $835.40 alleged to have been loaned to the defendant by the plaintiff. The answer of the defendant denies the alleged loan.

In 1919 a partnership consisting of the plaintiff, Gust Kippos, Jim Giannopulos, and Emanuel Giannopolus were engaged in the meat business at McGill, Nevada. During that year the partnership consisting of the above was dissolved, and a new partnership was organized, consisting of the plaintiff, Gust Kippos, the defendant, and Gust Chachas, to carry on the meat business at McGill. Later the new firm took a lease on the Campbell ranch, and engaged in the livestock business, buying and selling, in connection with the operation of the ranch and the meat business.

Gust Kippos was the bookkeeper for the partnership until the latter part of its existence. He testified that upon the dissolution of the first partnership above mentioned there was about $1,800 in his hands, presumably belonging to the plaintiff, though he did not so directly testify. He did testify, however, that the plaintiff told him to "keep that money—you hold that money. I am going to leave. You hold that money so you have some money there * * * for expenses — for personal money for the new partnership."

The witness testified at great length. He testified that the plaintiff told him to loan to and pay out for the defendant money from said fund, and, pursuant to such instructions, he did loan to him, and pay out

at defendant's request, sums aggregating the amount sued for.

The plaintiff corroborated the testimony of the witness Kippos.

The theory of the defendant is that, while he received the money, he drew it from the funds of the company, and not from the plaintiff in the case. He testified that often he took money from the company cash register and put in a tag therefor, and that on some occasions Kippos would hand him money from the cash register and put in a slip therefor. In this connection Kippos testified that the money so obtained was repaid from, and charged up to, the $1,800 fund.

Gust Chachas, the brother of the defendant, and one of the partners, testified that it was the custom of each of the members of the firm to get money from the company cash register and put in a tag.

There is also undisputed testimony to the effect that the defendant owned the building in which the meat shop was kept, for which he was to receive a rental of $50 per month.

The witness Kippos had destroyed or lost two books of the accounts of the firm—at least he was unable to produce them, and the defendant introduced in evidence a statement of bank accounts which it is claimed by defendant tends to establish his defense.

It was the theory of the defendant that he borrowed no money from the plaintiff, and, though he received the amount sued for, that it was all partnership money, and that upon an accounting it would be found that the partnership was indebted to him.

The trial court decided the case from the bench immediately upon the conclusion of the oral argument. In rendering his decision, the court said:

"I have my mind made up in this case. I think it is a separate transaction, because Mr. Chachas admits—admits that he owed the money. I think this is a separate and distinct transaction and Kippos himself testified to the same thing, and I don't see where the partnership is concerned at all. So judgment will be

for the plaintiff in this action in the sum of eight hundred and thirty-five dollars and forty cents, and costs of this suit."

In the second sentence the court stated that it reached its conclusion "because" the defendant admitted owing the money. There is not a scintilla of evidence on the part of the defendant wherein he admits owing the plaintiff a cent, and the entire theory of his defense, as shown by his evidence, is that the money he received was the money of the partnership, and not the money of the plaintiff.

In view of the clear misunderstanding of the evidence of the defendant, it seems that the judgment and order must be reversed. The third sentence of the pronouncement of the court, though couched in different language, is to the same effect as the previous one.

The complaint in this action was filed December 6, 1922, about three years after the partnership was formed, and the rentals from the partnership to the defendant during that time amounted to over $1,500.

If the statements from the bank had been considered, together with the other evidence, it may be that it would have been found that the defendant had a large sum of money coming to him from the company. However, in view of the fact that the court misinterpreted the evidence of the defendant, we need not consider the effect to be given to this evidence.

It is ordered that the judgment be reversed.